IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
vs. ) Case No. 23-cr-30121-SPM
)
TIMOTHY P. RODGERS, )
)
Defendant. )

**UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO CONTINUE CRIMINAL CASE AND
STAY PROCEEDINGS PENDING RESOLUTION OF VETERANS AFFAIRS CASE**

The United States of America, by and through its attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, and Zoe J. Gross, Assistant United States Attorney, asks this court to deny Defendant's motion to continue the criminal case and stay proceedings pending resolution of his pending Veterans Affairs case. Doc. 142.

## I.    Background

Defendant Timothy Rodgers was indicted in the Southern District of Illinois on October 17, 2023, with violations of wire fraud (18 U.S.C. § 1343), false statements (18 U.S.C. § 1001), concealment of bankruptcy assets (18 U.S.C. § 152(1)) and submitting a false bankruptcy declaration (18 U.S.C. § 152(3)). The Indictment resulted from an investigation conducted by the U.S. Department of Veterans Affairs, Office of Inspector General (VA-OIG) and the Federal Bureau of Investigations (FBI) into VA benefits fraud and bankruptcy fraud. *See* Doc. 1.

1

Defendant is a veteran of the United States Army, having served from January 2008 to October 2014. Before his discharge from the Army and continuing throughout the years after his discharge, Defendant applied for and received various VA Benefits, including Disability Compensation benefits and ultimately, Special Monthly Compensation (SMC). SMC is an additional benefit that can be paid to Veterans, their spouses, surviving spouses and parents. SMC is paid in addition to, or on top of, the Disability Compensation a veteran is paid based upon his or her percentage of disability. SMC is awarded to veterans who have lost certain appendages or organs, lost the use of certain appendages or organs, or whose service-connected injuries or diseases have certain impacts on the veterans' lives. Applicable law created several levels of SMC compensation, including what is sometimes referred to as "Aid and Attendance." This level of SMC is available for veterans who are permanently bedridden or who have such significant disabilities that they are in need of regular aid and attendance. The need for Aid and Attendance is defined as "helplessness or being so nearly helpless as to require the regular aid and attendance of another person."

The Indictment alleges that between February 2016 and September 2023, Defendant knowingly devised and engaged in a scheme to defraud the VA of SMC benefits by means of materially false and fraudulent pretenses, representations, and promises. Doc. 1 ¶ 2-3. The Indictment alleges that Defendant provided materially false information to the VA concerning his physical condition and the extent of his disability, and that the VA relied on this information in awarding him Special Monthly

Compensation in addition to his monthly disability compensation. The Indictment also alleges that Defendant did knowingly and willfully falsify, conceal, and cover up his actual physical capabilities as they related to his claim for Special Monthly Compensation by submitting numerous statements purportedly signed by his friends and family to the VA which contained materially false information regarding his need for regular aid and attendance.

Based on false information provided by Defendant, in a June 12, 2019 rating decision, the VA determined that he was entitled to Special Monthly Compensation and increased Defendant's monthly rate of compensation from $3,910.44 to $9,129.26. Doc. 1 ¶ 6. Defendant's monthly benefit was later increased to $10,600.92. *Id*. Approximately a year later, the VA relied upon the false information provided by Defendant to grant his entitlement to SMC beginning on an earlier date and awarded him a lump sum on SMC backpay in the amount of $294,631.73. *Id*. ¶ 7.

The VA-OIG's investigation into Defendant began in 2022. That investigation determined that Defendant seriously exaggerated the extent of his physical disabilities to obtain Special Monthly Compensation. The VA-OIG discovered evidence of Defendant running, lifting heavy items, socializing with friends, and driving—all evidence that was contrary to the sedentary life at home that he described to the VA in order to obtain SMC. The results of VA-OIG's investigation were forwarded to the Veterans Benefits Administration (VBA) to determine if Defendant was properly rated and entitled to SMC.

Following the VA-OIG investigation, in a rating decision issued on September 13, 2022, the Regional Office of the Veteran's Benefit Administration (VBA) proposed to

discontinue Defendant's entitlement to SMC. Defendant appealed that decision. On September 19, 2023, the VBA issued its final rating decision. In that rating decision, the VBA discontinued Defendant's entitlement to SMC and the VA reduced Defendant's monthly benefit from $10,600.92 to $3,985.96. Defendant appealed the severance of his SMC to the BVA on September 16, 2024. That appeal, BVA docket number 240916-474039, was assigned to the BVA on September 25, 2024, and as of the date of this response, is still pending and awaiting a hearing. If the BVA issues an adverse decision, Defendant will retain the right to appeal that decision to the Court of Appeals for Veterans Claims (CAVC). *See* 38 U.S.C. § 7252. An adverse decision by CAVC is then appealable by the United States Court of Appeals for the Federal Circuit and ultimately subject to the review by the Supreme Court upon certiorari. *See* 38 U.S.C. § 7292.

In addition to his pending appeal before the BVA, on December 7, 2023, Defendant filed a *pro se* writ of mandamus to CAVC. *Timothy P. Rodgers v. Douglas A. Collins, Secretary of Veterans Affairs*, Case. No. 23-7498.[1] In that case, Defendant, now represented by counsel, raises numerous allegations and demands that the CAVC order a stay in the VA's "cooperation" in this criminal matter until all of his administrative review avenues have been exhausted. Extensive briefing was conducted by the parties in that matter. In its response, the Secretary argued, *inter alia*, that the CAVC lacks authority to enjoin the Secretary from cooperating with the criminal case and that any injunction would frustrate the district court's exercise of its jurisdiction. *See Constantine v. McDonough*, 35 Vet.App.

---

[1] The docket for 23-7498 is available through the Court of Appeals for Veterans Claims CM/ECF system at https://efiling.uscourts.cavc.gov/cmecf/servlet/TransportRoom?servlet=CaseSummary.jsp&caseNum= 23-7498&incOrigDkt=Y&incDktEntries=Y

81, 83 (2022) (declining to exercise jurisdiction where the questions presented implicated the jurisdiction of another court). This matter was referred to a three-judge panel on the CAVC on November 24, 2025, and as of the date of this response, no decision has been made.

In addition to the counts relating to Defendant's alleged VA benefits fraud, Counts 9 and 10 of the Indictment allege that Defendant concealed bankruptcy assets and submitted false declarations in connection with two separate bankruptcy cases filed in our District. First, Count 9 alleges that in relation to a case under Title 11, *In re: Timothy P Rodgers and Ashley Rodgers*, No. 20-30135 (S.D. Ill. Bankr.), filed with the Bankruptcy Court on February 20, 2020, Defendant concealed property belonging to the bankruptcy estate—specifically, the VA Backpay in the amount of $294,631.73 received on June 10, 2020.

Count 10 alleges that in relation to a case under Title 11, *In re: Timothy P Rodgers*, No. 22-30346 (S.D. Ill. Bankr.), filed with the Bankruptcy Court on June 17, 2022, Defendant made false declarations, certifications, and verifications on his Statement of Financial Affairs by failing to disclose his receipt of the VA Backpay on June 10, 2020.

## II. Argument

Defendant moves this Court to continue and enter a stay in this case pending the undetermined outcome of his administrative proceedings before the Board of Veterans' Appeals (BVA) and Court of Appeals for Veterans Claims (CAVC). Defendant moves for this continuance under 18 U.S.C. § 3161(h)(7), arguing that the indefinite continuance in this matter would serve the ends of justice. The Government disagrees.

5

The decision to grant or deny a motion to continue is within the broad discretion of the district court. *United States v. Cosby*, 924 F.3d 329, 335 (7th Cir. 2019). A court may adhere to a set trial date unless there are compelling reasons to grant a continuance. *United States v. Vopentesta*, 727 F.3d 666, 679 (7th Cir. 2019). Motions to continue are not automatic, and the Seventh Circuit often upholds a district court's exercise in discretion in denying such a motion. *See Cosby*, 924 F.3d at 335; *United States v. Crowder*, 588 F.3d 929, 936 (7th Cir. 2009); *United States v. Miller*, 327 F.3d 598, 601 (7th Cir. 2003). While the possibility of prejudice to the defendant is one factor that courts consider when deciding whether to grant a continuance, vague, conclusory assertions of prejudice are not enough. *Crowder*, 588 F.3d at 936.

### a. The Defendant is not entitled to a stay or indefinite continuance.

Defendant's motion should be denied because there is no mechanism by which Defendant can seek a stay of the criminal matter. The Government is not aware of any federal rule, statute, or binding legal authority that provides for a stay of a criminal case. Unlike civil matters, stays are not expressly authorized or even contemplated in the Federal Rules of Criminal Procedure. That is likely because criminal cases involve interests of fundamental Constitutional rights, including the Sixth Amendment right to a speedy trial. Such a stay would require Defendant to agree to a prospective waiver of his speedy trial rights, which has been rejected by the Supreme Court. *See Zedner v. United States*, 547 U.S. 489, 499 (2006) (holding that a defendant may not prospectively waive the application of the Speedy Trial Act, and may not waive the right "for all time"). While a district court has the power to control their own dockets and stay *civil* proceedings,

*Clinton v. Jones*, 520 U.S. 681, 70 (1997), many of the factors considered by the court when deciding to stay civil proceedings relate to the existence of ongoing criminal proceedings. *Doe v. City of Chicago*, 360 F.Supp.2d 880, 881 (7th Cir. 2005). The reverse—a stay of a criminal case pending a civil matter—is not appropriate.

What Defendant is essentially asking for is an indefinite continuance of this case. If Defendant's motion is granted, the Court would be unable to set a trial date for a future date beyond the resolution of the pending VA administrative matters because there is no indication of *when* those matters will be resolved. In determining whether the ends of justice warrant a continuance of a trial date, the court must consider not only the Defendant's interest in a speedy trial, but the public's interest as well. *See, e.g.*, 18 U.S.C. § 3161(h)(7)(A) (to excluded delay resulting from a continuance—even one "granted…at the request of the defendant"—the district court must find "that the ends of justice served … outweigh the *best interest of the public* and the defendant *in a speedy trial*" (emphasis added)). This interpretation is consistent with the legislative history of the Speedy Trial Act, which discussed the Act's design to protect the public's interest in a speedy trial, including the public's interest in protecting the deterrent value of the criminal process. *See Zedner*, 547 U.S. at 501-02 (discussing the legislative history of the Act and its service of the public interest). A criminal case with no certainty of trial would undermine the deterrence value of the criminal process, and frustrate the public's interest in a speedy trial.

Defendant filed his appeal before the BVA on September 16, 2024. That appeal is still pending, and a hearing has not been scheduled before the BVA. Unlike this case,

there is no right to a speedy hearing or speedy resolution of Defendant's BVA claim. It could still be years before the BVA makes a determination.[2] Even after the BVA makes its determination, the administrative matter is *still* not over. If the BVA rules against Defendant, he has the right to appeal that adverse ruling to the CAVC. *See* 38 U.S.C. § 7252. That case may then undergo briefing and a hearing, taking a substantial amount of time to conclude. If the CAVC decides against Defendant, that decision is then appealable to the United States Court of Appeals for the Federal Circuit and ultimately subject to the review by the Supreme Court upon certiorari. *See* 38 U.S.C. § 7292. Even assuming, *arguendo*, that Defendant is successful before the BVA and his SMC benefits are reinstated, Defendant retains the right to appeal any rating decision issued by the VBA. Put simply, Defendant's administrative matters may continue into perpetuity. If Defendant is allowed to use those administrative matters to stay this case, he would have every incentive to do what it takes to extend them even further.

Defendant was indicted in October 2023. Since then, Defendant has moved to continue the trial on ten occasions for a variety of reasons. The Government did not object to those continuances. The Government also understands that there might be issues that arise in the coming months that would warrant—in the interests of justice—an additional continuance of some specific, modest length. But the Court cannot allow the Defendant

---

[2] According to the most recent annual report by the Board of Veterans' Appeals to Congress (FY 2024), the average time to complete an appeal from the Notice of Disagreement to a decision in a case involving a hearing is 1,091 days. It has been 603 days since Defendant filed his VA Form 10182 requesting a BVA appeal. *See* Department of Veterans Affairs (VA), Board of Veterans' Appeals Annual Report Fiscal Year (FY) 2024, https://department.va.gov/board-of-veterans-appeals/wp-content/uploads/sites/19/2025/04/2024_bva2024ar.pdf.

to use the pending VA administrative proceedings to further delay this case by staying the criminal proceeding or authorizing an indefinite continuance. This would clearly frustrate the purpose of the Speedy Trial Act and the public's interest in a speedy trial, which outweigh the Defendant's request.

      **b.**     **The criminal case and VA administrative cases can proceed independently and without causing prejudice to Defendant.**

Defendant argues that it will be a miscarriage of justice and that he will suffer prejudice if the criminal case does not yield to the administrative proceedings before the BVA and CAVC, ignoring the fact that this Court has original jurisdiction over Title 18 prosecutions, including those for wire fraud and false statements, regardless of the pending administrative proceedings. Throughout his motion to continue, Defendant argues that the BVA and CAVC are in the best position to make decisions regarding Defendant's entitlement to VA benefits. Doc. 142 ¶ 11. Defendant argues that this case cannot continue at this time because the issues in the Indictment overlap with other issues involving VA rules and regulations that are being resolved through the administrative process. Doc. 142 ¶¶ 11, 14. But the criminal case and Defendant's VA administrative proceedings can proceed independently of each other in such a way that will not cause a miscarriage of justice.

The appropriateness of parallel criminal and administrative proceedings was addressed by the Seventh Circuit in *United States v. Roberts*, 534 F.3d 560 (7th Cir. 2008). In *Roberts*, Mr. Roberts moved to dismiss the indictment, arguing that the VA was the appropriate agency to make determinations about veterans benefits because of its

"specialized knowledge, expertise and connection with the regulation of Veterans' Benefits," and that the district court lacked the jurisdiction to hear the federal charges of wire fraud stemming from his fraudulent receipt of VA benefits before his administrative claims were complete. *See United States v. Roberts*, Case No. 05-CR-118, ECF No. 103 (E.D. Wis. May 9, 2006). The district court denied the motion to dismiss, and after Roberts was convicted at trial, the Seventh Circuit affirmed. *Roberts*, 534 F.3d at 572. In doing so, the Seventh Circuit held that nothing in Title 38 prevented the district court from hearing the federal charges, notwithstanding a pending action before the Court of Appeals for Veterans Claims. *Id.* at 568.

Defendant does not cite to any authority—case law, statutory, or regulatory—that authorizes a stay or indefinite continuance of a criminal matter in light of a pending administrative appeal. The Government is likewise not aware of any such authority. Instead, Defendant cites various regulations under Title 38, none of which stand for the proposition that the ongoing VA administrative process prevents or delays this criminal prosecution. Defendant relies on 38 U.S.C. § 7252(a) for the proposition that the Court of Appeals for Veterans Claims (CAVC) has exclusive jurisdiction to hear this case, but this section simply establishes CAVC as an Article I court. This section provides:

> The Court of Appeals for Veterans Claims shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals. The Secretary may not seek review of any such decision. The Court shall have power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate.

38 U.S.C. § 7252(a).

As this statute clearly indicates, the CAVC's power is limited to reviewing decisions of the BVA. The CAVC can affirm, modify, or reverse a BVA decision, but the CAVC is not given the power to preside over a criminal prosecution. The case before this Court does not involve a "review" of a decision by the BVA regarding Defendant's disability rating or entitlement to benefits; it is a case examining whether Defendant "committed a federal crime in the process of obtaining these benefits." *Roberts*, 534 F.3d at 568. The mere involvement of VA benefits questions does not divest this Court of jurisdiction to hear allegations of federal crimes. *United States v. Sebero*, No. 08-CR-185, 2009 WL 720953, at *4 (E.D. Wash. Mar. 16, 2009) (denying motion to dismiss wire fraud charges for fraudulently obtaining VA benefits, rejecting the argument that Title 38 preempted the prosecution). *See also United States v. Henderson*, 416 F.3d 686, 691 (8th Cir. 2005) (rejecting jurisdictional challenge to wire fraud prosecution for statements in support of social security disability application because "the jury was not asked to measure [the defendant's] eligibility against SSA's regulations, but to decide whether she misrepresented or omitted material facts to SSA"). Defendant's theory would prevent district courts from being able to efficiently hear cases involving fraud committed against federal agencies that have their own authority to determine and review eligibility for some benefit.

Defendant also cites to 38 U.S.C. § 6103. This statute is found within Title 38 governing "Veterans Benefits," and provides:

> Whoever knowingly makes or causes to be made or conspires, combines, aids, or assists in, agrees to, arranges for, or in any way procures the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement,

voucher, or paper, concerning any claim for benefits under any of the laws administered by the Secretary (except laws pertaining to insurance benefits) shall forfeit all rights, claims, and benefits under all laws administered by the Secretary (except laws pertaining to insurance benefits).

38 U.S.C. § 6103(a).

This statute involves the forfeiture of VA "rights, claims, and benefits under all laws administered by the Secretary" upon a finding of fraud, as defined at 38 C.F.R. § 3.901. Section 6103 is not a criminal statute and has nothing to do with the criminal process or criminal forfeiture. Defendant argues that since this statute exists and references "fraud," that a criminal prosecution based upon the same facts must yield to the administrative proceeding. Defendant provides no authority for this proposition.

Defendant also warns of the possibility of inconsistent results if the criminal case is permitted to proceed while Defendant's BVA and other administrative remedies remain. *See* Doc. 142 ¶ 17. Defendant's chosen expert has professed that Defendant will be successful in his appeal before the BVA and will have his SMC benefits restored. But *even if* Defendant is successful in his appeal before the BVA and the rating decision that discontinued his benefits is overturned based on a technicality or procedural flaws, the ultimate outcome of the BVA or CAVC's review has *no bearing on the criminal case*. The Seventh Circuit made clear in Roberts that, "although the criminal case in the district court and the benefits appeal…involve the question of whether [the defendant] made false statements in his veterans' benefits claims, the criminal prosecution is independent of the administrative review process." *Roberts*, 534 F.3d at 568. The criminal and administrative matters involve different standards and burdens of proof, different

12

statutes, and different factfinders. They are completely independent. Even if Defendant were convicted in this case, he would still be able to continue with his administrative appeal through the VA system.

Defendant also argues that the BVA process must be completed before the criminal case can proceed because in order to prove the element of "intent to defraud," there must either be a gain to Defendant or a loss to the Government. Doc. 142 ¶ 16. But this logic is misplaced. While "intent to defraud" for purposes of wire fraud is defined as acting with the intent to cause a gain to the defendant or another, or the loss of money or property to another (*See Pattern Criminal Jury Instructions of the Seventh Circuit*, 2023 ed., p. 631), <u>actual loss is not required</u> for a conviction. The wire fraud statute punishes the scheme, not its success. *Pasquantino v. United States*, 544 U.S. 349, 371 (2005). *See also United States v. Coffman*, 94 F.3d 330, 333 (7th Cir.1996) (the wire fraud statute punishes the scheme rather than the completed fraud). Wire fraud is a "crime of attempting rather than attaining," *id*. at 337, and is "complete once a defendant with the requisite intent has used the wires in furtherance of a scheme to defraud, whether or not the defendant actually collects any money or property from the victim of the scheme." *United States v. Aslan*, 644 F.3d 526, 545 (7th Cir. 2011). As it stands today, Defendant *did* cause a loss to the United States by fraudulently obtaining thousands more a month from the VA in SMC benefits that he was not entitled to. If the Defendant is ultimately successful before the BVA and it reverses course, the crime of wire fraud has still been completed, and Defendant will still be prosecuted by the Department of Justice. The distant possibility that the VA might reinstate Defendant's benefits is not a reason to delay the inevitable criminal prosecution.

13

Notably, Defendant fails to cite 38 C.F.R. §§ 1.200, 1.201, and 1.204, which establish a duty for VA employees to *immediately refer* possible criminal matters involving *false claims and false statements* to the VA-OIG. Absent from these provisions is a requirement that delays or prevents the reporting until a veteran has exhausted the VA administrative process. Once VA-OIG has the information, it is "responsible for notifying the appropriate United States Attorney's Office." 38 C.F.R. § 1.205. Again, this notice is not delayed until after the administrative process concludes. Finally, 38 C.F.R. § 14.560 provides, in part, that the "Department of Justice, or the U.S. Attorneys, are charged with the responsibility of interpreting *and enforcing criminal statutes*, and the final determination as to whether the evidence in any case is sufficient to warrant prosecution is a matter solely for their determination…." (*emphasis added*).

Defendant's argument relies on the faulty premise that a veteran who has committed fraud in obtaining VA benefits can only be prosecuted once he has exhausted every possible avenue of his administrative remedies. As explained above, nothing in the VA regulations prevents the criminal process from proceeding in what has been recognized by the Seventh Circuit and elsewhere as a completely distinct process. The Court need not speculate regarding the possible outcome of Defendant's administrative matters—they have no bearing on the ability of the criminal prosecution to proceed and should not be used to delay this case any longer.

### III. Conclusion

Defendant's motion is an attempt to delay the inevitable. The requested relief—a stay or indefinite continuance of his criminal trial pending the outcome of his VA

administrative proceeding—is, to the best of the Government's knowledge, unprecedented. There is no basis in the Federal Rules, Speedy Trial Act, or relevant case law for such a continuance. Even if a stay or indefinite continuance were available, they should not be granted based on pending administrative matters that will have no impact on this Court's jurisdiction over this case or the Government's ability to prosecute it. For these reasons, Defendant's motion to stay should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA,

STEVEN D. WEINHOEFT
United States Attorney

ZOE J. GROSS
Assistant United States Attorney