IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,      )
      )
      Plaintiff,      )
      )
      vs.      )   Case No. 23-cr-30121-SPM
      )
TIMOTHY P. RODGERS,      )
      )
      Defendant.      )

**UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

The United States of America, by and through its attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, and Zoe J. Gross, Assistant United States Attorney, asks this court to deny the Defendant's motion to dismiss the Indictment (Doc. 143).

## I.    Background

Defendant Timothy Rodgers was indicted in the Southern District of Illinois on October 17, 2023, with violations of wire fraud (18 U.S.C. § 1343), false statements (18 U.S.C. § 1001), concealment of bankruptcy assets (18 U.S.C. § 152(1)) and submitting a false bankruptcy declaration (18 U.S.C. § 152(3)). The Indictment resulted from an investigation conducted by the U.S. Department of Veterans Affairs, Office of Inspector General (VA-OIG) and the Federal Bureau of Investigations (FBI) into VA benefits fraud and bankruptcy fraud. *See* Doc. 1.

1

Defendant is a veteran of the United States Army, having served from January 2008 to October 2014. Before his discharge from the Army and continuing throughout the years after his discharge, Defendant applied for and received various VA Benefits, including Disability Compensation benefits and ultimately, Special Monthly Compensation (SMC). SMC is an additional benefit that can be paid to Veterans, their spouses, surviving spouses and parents. SMC is paid in addition to, or on top of, the Disability Compensation a veteran is paid based upon his or her percentage of disability. SMC is awarded to veterans who have lost certain appendages or organs, lost the use of certain appendages or organs, or whose service-connected injuries or diseases have certain impacts on the veterans' lives. Applicable law created several levels of SMC compensation, including what is sometimes referred to as "Aid and Attendance." This level of SMC is available for veterans who are permanently bedridden or who have such significant disabilities that they are in need of regular aid and attendance. The need for Aid and Attendance is defined as "helplessness or being so nearly helpless as to require the regular aid and attendance of another person."

The Indictment alleges that between February 2016 and September 2023, Rodgers knowingly devised and engaged in a scheme to defraud the VA of SMC benefits by means of materially false and fraudulent pretenses, representations, and promises. Doc. 1, ¶ 2-3. The Indictment alleges that Rodgers provided materially false information to the VA concerning his physical condition and the extent of his disability, and that the VA relied on this information in awarding him Special Monthly Compensation in addition to his monthly disability compensation. The Indictment also alleges that Rodgers did

2

knowingly and willfully falsify, conceal, and cover up his actual physical capabilities as they related to his claim for Special Monthly Compensation by submitting numerous statements purportedly signed by his friends and family to the VA which contained materially false information regarding his need for regular aid and attendance.

Based on false information provided by Rodgers, in a June 12, 2019 rating decision, the VA determined that he was entitled to Special Monthly Compensation benefits and increased Rodgers monthly rate of compensation from $3,910.44 to $9,129.26. Doc 1., ¶ 6. Rodgers' monthly benefit was later increased to $10,600.92. *Id*. Approximately a year later, the VA relied upon the false information provided by Rodgers to grant his entitlement to Special Monthly Compensation beginning on an earlier date and awarded him a lump sum on Special Monthly Compensation backpay in the amount of $294,631.73. *Id*. ¶ 7.

The VA-OIG's investigation into Defendant began in 2022. That investigation determined that Defendant seriously exaggerated the extent of his physical disabilities to obtain Special Monthly Compensation benefits. The VA-OIG discovered evidence of Defendant running, lifting heavy items, socializing with friends, and driving—all evidence that was contrary to the sedentary life at home that he described to the VA in order to obtain SMC. The results of VA-OIG's investigation were forwarded to the Veterans Benefits Administration (VBA) to determine if Defendant was properly rated and entitled to SMC.

Following the VA-OIG investigation, in a rating decision issued on September 13, 2022, the VA proposed to discontinue Defendant's entitlement to SMC. Defendant

appealed that decision to the VBA. On September 19, 2023, the VBA issued its final Rating Decision. In that Rating Decision, the VBA discontinued Defendant's entitlement to SMC and the VA reduced Defendant's monthly benefit from $10,600.92 to $3,985.96. The stated reason for discontinuing his Special Monthly Compensation benefits was "fraud." Defendant appealed the severance of his SMC to the BVA on September 16, 2024. That appeal, BVA docket number 240916-474039, was assigned to the BVA on September 25, 2024, and as of the date of this response, is still pending. If the BVA issues an adverse decision, Defendant will retain the right to appeal that decision to the Court of Appeals for Veterans Claims (CAVC). *See* 38 U.S.C. § 7252. An adverse decision by CAVC is then appealable to the United States Court of Appeals for the Federal Circuit and ultimately subject to the review by the Supreme Court upon certiorari *See* 38 U.S.C. § 7292.

In addition to appealing his pending appeal before the BVA, on December 7, 2023, Defendant filed a *pro se* writ of mandamus to CAVC. *Timothy P. Rodgers v. Douglas A. Collins, Secretary of Veterans Affairs*, Case. No. 23-7498.[1] In that case, Defendant, now represented by counsel, raises numerous allegations and demands that the CAVC order a stay in the VA's "cooperation" in this criminal matter until all of his administrative review avenues have been exhausted. Extensive briefing was conducted by the parties in that matter. In its response, the Secretary argued, *inter alia*, that the CAVC lacks authority to enjoin the Secretary from cooperating with the criminal case and that any injunction would frustrate this Court's exercise of its jurisdiction. *See Constantine v. McDonough*, 35

---

[1] The docket for 23-7498 is available through the Court of Appeals for Veterans Claims CM/ECF system at https://efiling.uscourts.cavc.gov/cmecf/servlet/TransportRoom?servlet=CaseSummary.jsp&caseNum=23-7498&incOrigDkt=Y&incDktEntries=Y

Vet.App. 81, 83 (2022) (declining to exercise jurisdiction where the questions presented implicated the jurisdiction of another court). This matter was referred to a three-judge panel on the CAVC on November 24, 2025, and as of the date of this response, no decision has been made.

In addition to the counts relating to Rodgers' alleged VA benefits fraud, Counts 9 and 10 of the Indictment allege that Rodgers concealed bankruptcy assets and submitted false declarations in connection with two separate bankruptcy cases filed in our District. First, Count 9 alleges that in relation to a case under Title 11, *In re: Timothy P Rodgers and Ashley Rodgers*, No. 20-30135 (S.D. Ill. Bankr.), filed with the Bankruptcy Court on February 20, 2020, Rodgers concealed property belonging to the bankruptcy estate—specifically, the VA Backpay in the amount of $294,631.73 received on June 10, 2020.

Count 10 alleges that in relation to a case under Title 11, *In re: Timothy P Rodgers*, No. 22-30346 (S.D. Ill. Bankr.), filed with the Bankruptcy Court on June 17, 2022, Rodgers made false declarations, certifications, and verifications on his Statement of Financial Affairs by failing to disclose his receipt of the VA Backpay on June 10, 2020.

## II.  Argument

### a. Defendant's Motion is not timely and should be denied.

As a threshold matter, Defendant's motion to dismiss should be denied because it was untimely filed. Federal Rules require that motions made pursuant to Federal Rule of Criminal Procedure 12(b)(3) must be made timely. Fed.R.Crim.P. 12(c)(1-3). If filed untimely, the defendant must show good cause to excuse his delay. The Seventh Circuit upholds denial of dispositive motions when they are filed untimely. *United States v.*

*Suggs*, 703 Fed.Appx. 425 (7th Cir. 2017). District Courts may accept late submissions if the defendant shows good cause for the untimely submission. Fed.R.Crim. P. 12(b)(3)(C), (c)(1), (c)(3). A defendant must satisfy the good-cause requirement before this court may review the motion. *United States v. McMillian*, 786 F.3d 630, 635–36 (7th Cir. 2015).

On October 17, 2023, the Indictment in this matter was filed. Doc. 1. On November 9, 2023, an Order Regarding Pre-Trial Discovery and Motion Practice was issued by United States Magistrate Judge Mark A. Beatty. Doc. 9. That Order included the following:

> If a party desires to file any other motion, **including a motion to dismiss the indictment or a motion to suppress**, the motion shall be filed within **42 days** of the arraignment and supported by a memorandum of law. The opposing party shall file a response within **14 days** of the date the motion was filed, unless otherwise ordered by the court. **Any request to continue the initial trial setting shall include a request to likewise extend the deadline for filing pretrial motions, if additional time is needed.**

(emphasis in original). *Id*. at 3.

Defendant has been represented by four different attorneys in this matter. Defendant's initial counsel, Matthew Radefeld, entered his appearance on November 9, 2023. Doc. 6. He was substituted for Attorney Brian Lewis on November 14, 2023. Doc. 13. Defendant's present counsel entered his appearance on June 5, 2025. Doc. 91. Present counsel received discovery from the Government on June 18, 2025.

Defendant's proposed Motion to Dismiss is premised on the existence of an administrative process that began in September 2023 when the VBA issued its final Rating Decision and discontinued his SMC benefits, approximately a month before the Grand Jury returned the Indictment in this matter. Defendant's stated reason for the delay in

filing the motion to dismiss is that the issues contained within did not become apparent until the defense retained its expert on April 14, 2026. But, Defendant has known of the existence of the administrative proceeding that serves as the basis for dismissal or delay since September 2023 when the VBA issued its final Rating Decision, or at least September 16, 2024, when he filed the BVA appeal. Defendant has been retained by counsel throughout this case, and pretrial motions were due long ago. The Court should deny Defendant's motion for this reason.

### b. The Court should deny Defendant's Motion on the merits.

Defendant moves this Court to dismiss the Indictment without clearly stating on what grounds his motion is made. Defendant argues that the criminal case must be dismissed because the BVA either has exclusive jurisdiction over cases involving VA benefits obtained by fraud, is the only court with the knowledge to understand VA regulations, or that all VA administrative remedies must be exhausted before the criminal case can proceed. Defendant does not cite any authority to support these arguments, and fails to acknowledge established precedent that recognizes that the criminal and administrative processes are distinct and may proceed independently.

Rule 12 of the Federal Rules of Criminal Procedure governs dispositive pretrial motions, including motions to dismiss. Rule 12 sets forth an extensive list of grounds for dismissal, including lack of jurisdiction (F.R.C.P. 12(b)(2)), a defect in instituting the prosecution (F.R.C.P. 12(b)(3)(A)), a defect in the indictment or information (F.R.C.P. 12(b)(3)(B)), suppression of evidence (F.R.C.P. 12(b)(3)(C)), severance of charges or defendants (F.R.C.P. 12(b)(3)(D)), or discovery violations (F.R.C.P. 12(b)(3)(E)).

Defendant's motion to dismiss fails to establish which, if any, of these recognized grounds for dismissal are applicable here.

### i. The district court has original jurisdiction over Defendant's federal criminal offenses and may proceed independent of the administrative process.

The Government interprets the Defendant's primary argument to be jurisdictional in nature—Defendant believes this Court lacks jurisdiction over this matter because of the various administrative proceedings pending before the Board of Veterans' Appeals (BVA) and Court of Appeals for Veterans Claims (CAVC). Throughout his motion to dismiss, Defendant makes unsupported assertions such as the "Indictment is premature" (Doc. 143, ¶ 15) and that the decisions regarding Defendant's entitlement to benefits are "best left to the Courts established by the United States Congress" (Doc. 143, ¶ 12). Defendant argues that this case cannot continue at this time because the issues in the Indictment overlap with other issues involving VA rules and regulations that are being resolved through the administrative process. (Doc. 143, ¶¶ 8, 11).

This argument was addressed and unambiguously rejected by the Seventh Circuit in *United States v. Roberts*, 534 F.3d 560 (7th Cir. 2008). In *Roberts*, Mr. Roberts moved to dismiss the indictment, arguing that the VA was the appropriate agency to make determinations about veterans benefits because of its "specialized knowledge, expertise and connection with the regulation of Veterans' Benefits," and that the district court lacked the jurisdiction to hear the federal charges of wire fraud stemming from his fraudulent receipt of VA benefits before his administrative claims were complete. *See United States v. Roberts*, Case No. 05-CR-118, ECF No. 103 (E.D. Wis. May 9, 2006). The

district court denied the motion to dismiss, and after Roberts was convicted at trial, the Seventh Circuit affirmed. *Roberts*, 534 F.3d at 572. In doing so, the Seventh Circuit held that nothing in Title 38 prevented the district court from hearing the federal charges, notwithstanding a pending action before the Court of Appeals for Veterans Claims. *Id*. at 568.

As it relates to his scheme to defraud the VA,[2] the Indictment charges Defendant with violations of wire fraud and false statements, each count being an offense against the law of the United States, in violation of 18 U.S.C. §§ 1343 and 1001. Title 18 U.S.C. § 3231 provides, in relevant part, that the district courts have original jurisdiction over "all offenses against the laws of the United States." This clearly includes violations of 18 U.S.C. §§ 1343 and 1001. District courts <u>can</u> and regularly <u>do</u> hear Title 18 cases involving fraudulent schemes to obtain benefits from government agencies, including the VA. *See, e.g.*, *Roberts*, 534 F.3d at 567-72 (upholding conviction under § 1343 for scheme to obtain more than $320,000 in veterans' benefits relating to PTSD from a traumatic event that defendant had not been part of); *United States v. Rennicke*, 132 Fed.Appx. 652, 655 (7th Cir. 2005) (two defendants convicted under § 1341 and § 1343 for scheme exaggerating physical disability in support of VA claims); *United States v. Gray*, 121 F.4th 578 (6th Cir. 2024) (defendant convicted of Title 18 offenses including conspiracy to defraud the Government, submitting false statements to the VA, and theft of government funds for

---

[2] Defendant's motion fails to reference the bankruptcy fraud charges alleged in Counts 9 and 10. Rather than moving to dismiss just the counts involving the scheme to defraud and false statements to the VA, Defendant moves to dismiss the entirety of the Indictment. Defendant has provided no argument for the dismissal of Counts 9 and 10.

lying to the VA about his physical disabilities to obtain VA benefits, including SMC benefits); *United States v. Brown*, 948 F.2d 1076 (8th Cir. 1991) (defendant convicted of mail fraud under 18 U.S.C. § 1341 for scheme to convince the VA he was wheelchair-bound in order to increase his VA disability rating); *United States v. Wicker*, No. 24-CR-90, 2025 WL 4218840 (D. Minn. November 21, 2025) (defendant convicted of various charges including wire fraud for holding himself out as a decorated veteran to obtain disability compensation benefits that he was not entitled to). Defendant suggests that some sort of specialized knowledge would be required by the Court, prosecution team, and jury to properly hear this case. But that is not so. The technicalities of Defendant's VA benefits determination is not at issue here. What is at issue is whether Defendant committed the Title 18 offenses of wire fraud and false statements to obtain those benefits—offenses over which this Court has original jurisdiction.

Defendant's motion to dismiss fails to address 18 U.S.C. § 3231 and cites no regulations that are inconsistent with this Court's jurisdiction under § 3231. Instead, Defendant cites various regulations under Title 38, none of which stands for the proposition that the ongoing VA administrative process prevents or delays this criminal prosecution. Defendant relies on 38 U.S.C. § 7252(a) for the proposition that this Court lacks the necessary jurisdiction to hear this case, but this section simply establishes the Court of Appeals for Veterans Claims (CAVC) as an Article I court. This section provides:

> The Court of Appeals for Veterans Claims shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals. The Secretary may not seek review of any such decision. The Court shall have power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate.

38 U.S.C. § 7252(a).

As this statute clearly indicates, the CAVC's power is limited to reviewing decisions of the BVA. The CAVC can affirm, modify, or reverse a BVA decision, but the CAVC is not given the power to preside over a criminal prosecution. The case before this Court does not involve a "review" of a decision by the BVA regarding Rodgers' disability rating or entitlement to benefits; it is a case examining whether Rodgers "committed a federal crime in the process of obtaining these benefits." *Roberts*, 534 F.3d at 568. The "mere involvement of VA benefits does not divest a federal court to hear allegations of federal crimes." *United States v. Sebero*, No. 08-CR-185, 2009 WL 720953, at *4 (E.D. Wash. Mar. 16, 2009) (denying motion to dismiss wire fraud charges for fraudulently obtaining VA benefits, rejecting the argument that Title 38 preempted the prosecution). *See also United States v. Henderson*, 416 F.3d 686, 691 (8th Cir. 2005) (rejecting jurisdictional challenge to wire fraud prosecution for statements in support of social security disability application because "the jury was not asked to measure [the defendant's] eligibility against SSA's regulations, but to decide whether she misrepresented or omitted material facts to SSA"). Defendant's theory would prevent district courts from ever having jurisdiction over fraud committed against federal agencies that have their own authority to determine and review eligibility for some benefit.

Defendant also cites to 38 U.S.C. § 6103. This statute is found within Title 38 governing "Veterans Benefits," and provides:

> Whoever knowingly makes or causes to be made or conspires, combines, aids, or assists in, agrees to, arranges for, or in any way procures the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement,

11

voucher, or paper, concerning any claim for benefits under any of the laws administered by the Secretary (except laws pertaining to insurance benefits) shall forfeit all rights, claims, and benefits under all laws administered by the Secretary (except laws pertaining to insurance benefits).

38 U.S.C. § 6103(a).

This statute involves the forfeiture of VA "rights, claims, and benefits under all laws administered by the Secretary" upon a finding of fraud, as defined at 38 C.F.R. § 3.901. Section 6103 is not a criminal statute and has nothing to do with the criminal process or criminal forfeiture. Defendant suggests that since this statute exists and references "fraud," that a criminal prosecution based upon the same facts is prohibited or preempted. Defendant provides no authority for this proposition.

Defendant also warns of the possibility of inconsistent results if the criminal case is permitted to proceed while Defendant's BVA and other administrative remedies remain. (*See* Doc. 143, ¶ 14). Defendant's proposed expert has professed that Defendant will be successful in his appeal before the BVA and will have his SMC benefits restored. But *even if* Defendant is successful in his appeal before the BVA and the rating decision that discontinued his benefits is overturned based on a technicality or procedural flaws, the ultimate outcome of the BVA or CAVC's review has *no bearing on the criminal case*. The Seventh Circuit made clear in Roberts that, "although the criminal case in the district court and the benefits appeal…involve the question of whether [the defendant] made false statements in his veterans' benefits claims, the criminal prosecution is independent of the administrative review process." *Roberts*, 534 F.3d at 568. The two involve different standards and burdens of proof, different statutes, and different factfinders. They are

completely independent. Even if Defendant were convicted in this case, he would still be able to continue with his administrative appeal through the VA system.

Defendant also argues that the BVA process must be completed before the criminal case can proceed because in order to prove the element of "intent to defraud," there must either be a gain to Defendant or a loss to the Government. But this is simply not true. While "intent to defraud" for purposes of wire fraud is defined as acting with the intent to cause a gain to the defendant or another, or the loss of money or property to another (*See Pattern Instructions of the Seventh Circuit*, 2023 ed., p. 631), <u>actual loss is not required</u>. The wire fraud statute punishes the scheme, not its success. *Pasquantino v. United States*, 544 U.S. 349, 371 (2005). *See also United States v. Coffman*, 94 F.3d 330, 333 (7th Cir.1996) (the wire fraud statute punishes the scheme rather than the completed fraud). Wire fraud is a "crime of attempting rather than attaining," *id*. at 337, and "is complete once a defendant with the requisite intent has used the wires in furtherance of a scheme to defraud, whether or not the defendant actually collects any money or property from the victim of the scheme." *United States v. Aslan*, 644 F.3d 526, 545 (7th Cir. 2011). As it stands today, Defendant *did* cause a loss to the United States by fraudulently obtaining thousands more a month from the VA in SMC benefits that he was not entitled to. If the Defendant is ultimately successful before the BVA and it reverses course, the crime of wire fraud has still been completed. The distant possibility that the VA might reinstate Defendant's benefits is not a reason to dismiss or delay the criminal prosecution.

Notably, Defendant fails to cite 38 C.F.R. §§ 1.200, 1.201, and 1.204, which establish a duty for VA employees to *immediately refer* possible criminal matters involving *false*

*claims and false statements* to the VA-OIG. Absent from these provisions is a requirement that delays or prevents the reporting until a veteran has exhausted the VA administrative process. Once VA-OIG has the information, it is "responsible for notifying the appropriate United States Attorney's Office." 38 C.F.R. § 1.205. Again, this notice is not delayed until after the administrative process concludes. Finally, 38 C.F.R. § 14.560 provides, in part, that the "Department of Justice, or the U.S. Attorneys, are charged with the responsibility of interpreting *and enforcing criminal statutes*, and the final determination as to whether the evidence in any case is sufficient to warrant prosecution is a matter solely for their determination…." (*emphasis added*).

Defendant's argument relies on the faulty premise that a veteran who has committed fraud in obtaining VA benefits can only be prosecuted by the VA, or that the criminal prosecution must wait until the VA administrative process is resolved. As explained above, nothing in the VA regulations prevents the criminal process from proceeding in what has been recognized by the Seventh Circuit and elsewhere as a completely distinct process. Further, an administrative finding adverse to the veteran or a sustained actual loss to the Government are not elements of the Title 18 offenses that Defendant has been charged with.

### ii. The Indictment adequately alleges the charged offenses.

Defendant's motion also suggests that the Indictment should be dismissed because the testimony that was presented to the Grand Jury "did not adequately set forth the issues that need to be resolved by the VA Court." Doc. 143, ¶ 17. Defendant—who has access to the Grand Jury testimony in this case only as a result of the Government's early

disclosure of Jencks materials[3]—believes that the Indictment is flawed because the VA appeals process the status of Defendant's administrative appeal was not explained to the Grand Jury. This is not a proper basis for a motion to dismiss.

A motion to dismiss an indictment tests only the sufficiency of the charging document and not the strength of the government's evidence. An indictment is sufficient if it contains the elements of the offense, fairly informs the defendant of the charge, and enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). The Seventh Circuit has repeatedly held that an indictment that tracks the statutory language and provides basic factual context satisfies these requirements. *United States v. White*, 610 F.3d 956, 958-59 (7th Cir. 2010); *United States v. Palumbo Bros. Inc.*, 145 F.3d 850, 860 (7th Cir. 1998); *United States v. Smith*, 230 F.3d 300, 306 (7th Cir. 2000). At the motion to dismiss stage, courts accept the allegations of the indictment as true and do not resolve factual disputes or

---

[3] The Jencks Act, 18 U.S.C. § 3500 and Rule 26.2 of the Federal Rules of Criminal Procedure provide that after a witness called by the government has testified, a criminal defendant, upon motion, is entitled to any prior statements made by the witness that relate to the subject matter of the witness's testimony. The government is not required to produce a witness's grand jury transcript under the Jencks Act and Rule 26.2 until after the witness has completed his or her direct testimony. *United States v. Callahan*, 534 F.2d 763, 766 (7th Cir. 1976). The government may, as it did in this case, move for early disclosure of grand jury testimony pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(i). A court may also order early disclosure of grand jury testimony at the request of a defendant "who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." F.R.C.P. 6(e)(3)(E)(ii). But, a defendant's ability to attack the validity of an indictment based on matters which occurred before the grand jury has been limited by the Supreme Court to those instances where the alleged misconduct seriously undermined the grand jury's independence and unfairly prejudiced the defendant. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988); *United States v. Williams*, 504 U.S. 36 (1992). Defendant's comments regarding testimony before the Grand Jury in this matter (Doc. 143 ¶ 15) don't allege any sort of grand jury abuse, let alone the type of misconduct that would be necessary for a dismissal of this case on those grounds.

evaluate the sufficiency of the government's evidence. *United States v. Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989).

The Indictment in this case easily satisfies these standards. It alleges that Defendant engaged in a scheme to defraud the VA of Special Monthly Compensation benefits by means of materially false and fraudulent pretenses, representations, and promises. It sets forth the materially false information that the Defendant provided, how the VA relied on that information to award Defendant benefits, and the interstate wires that were the result of the scheme. It likewise sets forth how Defendant concealed his actual physical capabilities by providing materially false information and submitting false documents to the VA. Each count alleges the elements of the offense and provides sufficient factual detail to inform defendant of the charges. That is all the law requires.

## III. Conclusion

Defendant's motion is an attempt to strip this Court of its original jurisdiction over the Title 18 charges and insert alleged regulatory complexity into a straightforward prosecution for fraud. The Indictment adequately alleges violations of federal fraud and false statement statutes. The Court need not concern itself with the speculative outcome of the VA administrative process, which is distinct and has no bearing on the criminal case. For these reasons, Defendant's motion to dismiss should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA,

STEVEN D. WEINHOEFT
United States Attorney

ZOE J. GROSS
Assistant United States Attorney